**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LORILLARD TECHNOLOGIES, INC. et al.,** | Civ. No. 2:14-2044 |
| **Plaintiffs,** | (KM)(MAH) |
| **v.** | |
| **NJ ALE HOUSE, LCC d/b/a BLU ALEHOUSE,** | **OPINION** |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the court on the motion (ECF No. 11) of Defendant NJ Ale House, LLC d/b/a Blu Alehouse ("NJ Ale House") to dismiss the complaint (ECF No. 1) of Plaintiffs Lorillard Technologies, Inc. ("LTI") and LOEC, Inc. ("LOEC"). LTI and LOEC own a federally registered "BLU ECIGS" trademark as well as applications for other trademarks in the "BLU Family of Marks" related to their sales of electronic cigarette products. NJ Ale House uses "BLU ALEHOUSE" trademarks in connection with its operation of a bar and restaurant in New Jersey. LTI and LOEC allege that NJ Ale House's use of the "BLU ALEHOUSE" marks infringes on the BLU Family of Marks.

The Complaint pleads (1) a federal claim for trademark infringement, pursuant to 15 U.S.C. § 1114(1); (2) a federal claim for unfair competition, pursuant to 15 U.S.C. § 1125(a); (3) a New Jersey common law trademark infringement claim; and (4) a New Jersey claim for unfair competition, pursuant to N.J.S.A. 56:4-1.

For the reasons set forth below, the motion to dismiss is DENIED.

## I.   BACKGROUND[1]

LTI and LOEC are Delaware corporations with principal places of business in North Carolina. (Compl. ¶3, ECF No. 1). LTI owns the trademark rights to the BLU Family of Marks, which includes an electronic cigarette product. (*Id.*). LOEC is the sole licensee in charge of the manufacture and sale of BLU electronic cigarettes and related products. (*Id.* ¶¶3, 11).

NJ Ale House is a New Jersey corporation with a principal place of business in New Jersey. (*Id.* ¶4). NJ Ale House owns and operates the Blu Alehouse bar and restaurant, located at 92 Route 23, North Riverdale, New Jersey 07457. (*Id.* ¶5).

### a.   BLU Family of Marks

LTI and LOEC have invested substantial resources advertising BLU cigarettes and other products under the BLU Family of Marks. (*Id.* ¶11). They have sold millions of BLU electronic cigarette products throughout the United States, including New Jersey. (*Id.*).

LTI owns and LOEC licenses United States Trademark Registration No. 3,846,035 for the mark "BLU ECIGS" for "Cigarettes containing tobacco substitutes not for medical purposes; Electronic cigarettes for use as an alternative to traditional cigarettes; Smokeless cigarette vaporizer pipe; [and] Tobacco substitutes." (*Id.* ¶12 (citing Compl. Ex. A). The BLU ECIGS mark was first used in commerce on May 1, 2009. (*Id.*). Additionally, LTI owns and LOEC licenses the following applications to register related marks:

  a.  Application No. 85/092665, filed on July 26, 2010, to register "BLU CIGS" for "Electronic cigarettes containing tobacco substitutes not for medical purposes that utilize electronic cigarette chargers and not lighters; electronic cigarettes for use as

---

[1]     The facts that follow are taken from the complaint (ECF No. 1). They are assumed to be true solely for the purposes of the motion to dismiss.

an alternative to traditional cigarettes that utilize electronic cigarette chargers and not lighters; smokeless cigarette vaporizer pipes that utilize electronic cigarette chargers and not lighters" with a first use date of May 1, 2009 (the "BLU CIGS Mark"). [Compl. Ex. B].

b. Application No. 85/131287, filed on September 16, 2010, to register "BLU" for "Electronic cigarettes that utilize electronic cigarette chargers and not lighters; electronic cigarettes for use as an alternative to traditional cigarettes that utilize electronic cigarette chargers and not lighters; smokeless cigarette vaporizer pipes that utilize electronic cigarette chargers and not lighters" with a first use date of May 1, 2009 (the "BLU Mark"). [Compl. Ex. C].

c. Application No. 85/131965, filed on September 17, 2010, to register "BLU (design mark)" for "Electronic cigarettes that utilize electronic cigarette chargers and not lighters; electronic cigarettes for use as an alternative to traditional cigarettes that utilize electronic cigarette chargers and not lighters; smokeless cigarette vaporizer pipes that utilize electronic cigarette chargers and not lighters" with a first use date of May 1, 2009 (the "BLU Design Mark"). [Compl. Ex. D].

d. Application No. 86/010437, filed on July 15, 2013, to register "BLU CART" for "Cartridges sold filled with glycerin-based chemical flavorings in liquid form to produce the vapor and supply the flavoring for electronic cigarettes; chemical flavorings in liquid form used to refill electronic cigarette cartridges" with a first use date of May 1, 2009 (the "BLU CART Mark"). [Compl. Ex. E].

e. Application No. 86/010469, filed on July 15, 2013, to register "BLU APP" for "Providing temporary use of online non-downloadable software applications for creating personalized on-line information services and enabling cross-platform login, registration and data display for, to and from third party services; computer services, namely, hosting online web facilities for others for organizing and conducting online meetings, gatherings, and interactive discussions; computer services, namely, creating, maintaining and hosting a website over the internet that gives the computer user the ability to upload, post, show, display, tag, blog a variety of information of general interest to the user; providing temporary use of online non-downloadable software applications to enable uploading, posting, showing, displaying, tagging, blogging, emailing, sharing or otherwise providing electronic media or information over the internet; providing temporary use of online non-downloadable software applications for creating an online virtual community, social networking, photo sharing, video sharing, audio sharing, and transmission of photographic images"

3

with a first use date of May 1, 2009 (the "BLU APP Mark"). [Compl. Ex. F].

f. Application No. 86/078727, filed on July 15, 2013, to register "BLU NATION" for "Customer rewards and loyalty programs which provides loyalty points for online purchase of company's goods, the issuance and processing of loyalty coupons for frequent use of participating businesses" with a first use date of May 1, 2009 (the "BLU NATION Mark"). [Compl. Ex. G].

(*Id.* ¶13).

LTI and LOEC allege that the BLU Family of Marks has become well known and instantly recognizable. (*Id.* ¶14). In particular, LTI and LOEC have distinguished BLU cigarettes from traditional cigarettes and other electronic cigarettes "by adding a blue colored LED tip, which lights up in blue when a user inhales vapor produced by the electronic cigarette." (*Id.* ¶15). This blue-colored LED tip is well known and recognized by consumers. (*Id.*). LTI and LOEC have also distinguished their cigarette with the "simple and powerful" brand "BLU." (*Id.*).

LTI and LOEC have promoted the BLU Family of Marks in numerous ways, including (1) sponsoring a top-35 car in the NASCAR Sprint Cup Series; (2) including BLU products in gift bags at major entertainment and sporting events; (3) using the BLU Family of Marks to run a nationwide campaign to help raise money for the Wounded Warrior Project; (4) advertising the BLU Family of Marks in national and local media, including print publications, online media, and television commercials; and (5) advertising the BLU Family of Marks at sponsored bars, restaurants, and lounges. (*Id.* ¶¶17–19, 21).

BLU cigarette products are sold at thousands of retail locations throughout the United States and online. These include Walgreens, Cumberland Farms, Sheetz, BiLo, H-E-B, Ingles, Meijer, Jackson Foods, Weis Markets, Kerr Drug, Scolari's, www.bluecigs.com, and others. (*Id.* ¶20).

LTI and LOEC allege that the "BLU Family of Marks are inherently distinctive and have come to be associated by consumers with a single source." (*Id.* ¶23).

### b. Alleged acts of infringement and unfair competition

NJ Ale House operates Blu Alehouse, a bar and restaurant in North Riverdale, New Jersey. (*Id.* ¶25). LTI and LOEC allege that NJ Ale House's "BLU ALEHOUSE" marks are confusingly similar to the BLU Family of Marks. (*Id.*).

On January 16, 2014, NJ Ale House filed an application to register the mark "BLU ALEHOUSE" for "Bar and cocktail lounge services; Bar services; Restaurant and bar services." (*Id.* ¶27 (citing Ex. I)). That mark was first used in commerce on January 15, 2014. (*Id.*).[2]

NJ Ale House has advertised its marks on social media such as Facebook. (*Id.* ¶28).

LTI and LOEC allege that Blu Alehouse bar and restaurant is directed at a similar consumer base as LTI and LOEC's BLU products because BLU products are promoted at bars, restaurants, and lounges. (*Id.* ¶29).

LTI and LOEC also allege that the BLU ALEHOUSE marks and the BLU Family of Marks are similar "in overall look, feel, and connotation." (*Id.* ¶30). Below paragraph 16 of the complaint are two images of BLU Family of Marks products, both of which include their marks. The examples include the word "blu" written in lowercase letters, the colors blue, white, grey, and black, and a blue triangle with one of its vertices at

---

[2]     LTI and LOEC refer to the BLU ALEHOUSE marks in both the singular and plural in their complaint. For simplicity, I will refer to the plural for the remainder of this motion, as LTI and LOEC give examples of at least two different BLU ALEHOUSE marks in their complaint. (Compl. ¶26). The number of trademarks owned by NJ Ale House is not significant to deciding the motion to dismiss.

the top of the letter "l" in "blu." (*Id.* ¶16). The images are below:

 

Examples of the BLU ALEHOUSE marks appear below paragraph 26 of the complaint. They include the word "blu" written in lowercase letters, the colors blue and white, a circle around the word "blu," and a flame appearing on top of the word "blu." (*Id.* ¶26). LTI and LOEC say that the BLU ALEHOUSE marks' "blue circle, surrounded by smoke, containing the lowercase letters 'blu,' is confusingly similar to the BLU Family of Marks." (*Id.* ¶30). The images are below:

 

LTI and LOEC allege that NJ Ale House's use of the BLU ALEHOUSE marks "is likely to cause confusion, mistake, or deception among the relevant trade and consuming public." (*Id.* ¶31). They contend that NJ Ale House has constructive and actual notice of the BLU Family of Marks. (*Id.* ¶32).

LTI and LOEC further allege that it is NJ Ale House's purpose and intent to confuse "the relevant public into mistakenly believing that the BLU ALEHOUSE goods and services are associated with, affiliated with, or sponsored by [LTI and LOEC]." (*Id.* ¶33).

On or about February 19, 2014, counsel for LTI and LOEC mailed a cease and desist letter to NJ Ale House. (*Id.* ¶34 (citing Ex. J)). NJ Ale House has not responded to the letter. (*Id.* ¶35).

LTI and LOEC allege that NJ Ale House's use of the BLU ALEHOUSE marks damages LTI and LOEC's reputation and goodwill. (*Id.* ¶36).

LTI and LOEC plead four causes of action: (1) a federal claim for trademark infringement, pursuant to 15 U.S.C. § 1114(1); (2) a federal claim for unfair competition, pursuant to 15 U.S.C. § 1125(a); (3) a New Jersey common law trademark infringement claim; and (4) a New Jersey claim for unfair competition, pursuant to N.J.S.A. 56:4-1. They seek injunctive relief, damages, an order directing the United States Patent and Trademark Office (USPTO) to refuse registration to NJ Ale House's Trademark Application for BLU ALEHOUSE marks, and all other relief this Court deems just and proper.

NJ Ale House now moves to dismiss the all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II.   DISCUSSION

### A. Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint

contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### B. Analysis

NJ Ale House moves to dismiss the complaint, arguing that LTI and LOEC fail to sufficiently allege that their trademarks are valid and that consumers would be confused about whether the BLU ALEHOUSE marks are affiliated in some way with the BLU Family of Marks. (Def. Mot. 6, ECF No. 11-9). Because LTI and LOEC have alleged sufficient facts in support of all of the elements of their claims, the motion to dismiss will be denied.

All of the allegedly violated federal and state statutes are measured by the same standards. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (Courts "measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards." (internal citation omitted)); *J & J Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the

8

elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law").

"To prove either [trademark infringement or unfair competition], a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc.*, 237 F.3d at 210 (internal citation omitted).

NJ Ale House argues that LTI and LOEC fail to allege sufficient facts for all three elements of their claims.

### 1. *Valid and legally protectable mark; ownership of the mark (Elements 1, 2)*

NJ Ale House argues that validity, legal protectability, and ownership are not sufficiently pled because none of LTI and LOEC's marks are "incontestable." (Def. Mot. 6–7). "If the mark at issue was federally registered and had become 'incontestable,' pursuant to 15 U.S.C. §§ 1058 and 1065, validity, legal protectability, and ownership are proved." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991) (citation omitted).

In this case, LTI and LOEC have alleged that only BLU ECIGS is a registered trademark. (Compl. ¶12 (citing Ex. A)). LTI and LOEC allege that the BLU ECIGS mark has a first use in commerce date of May 1, 2009. (*Id.*). Because 15 U.S.C. § 1065 requires that a mark be in continuous use for five consecutive years to be incontestable, BLU ECIGS is not yet incontestable. LTI and LOEC's other marks are alleged to be in the application stage, which means they are not yet federally registered. (*Id.* ¶13).[3]

---

[3]     NJ Ale House and LTI and LOEC also discuss challenges to the BLU Family of Marks before the USPTO and in a case before the United States District Court for the Central District of California. (*See* Def. Mot. 7–8; Pl. Opp.

Where a mark is incontestable, a plaintiff's burden is eased, but a mark need not be incontestable to be valid and protectable. "Where a mark has not been federally registered or has not achieved incontestability, validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive." *Ford Motor Co.*, 930 F.2d at 292; *see also Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). "Importantly, several courts have found that if a plaintiff owns a registered mark, then it is entitled to a strong prima facie presumption that its registered mark is distinctive or it is descriptive and 'secondary meaning is presumed.'" *Alliance Bank v. New Century Bank*, 742 F. Supp. 2d 532, 549 (E.D. Pa. 2010) (citing *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 167 F. Supp. 2d 770, 776 (E.D. Pa. 2001) (*A & H II*)). Beyond this prima facie presumption, LTI and LOEC have pled sufficient facts for this Court to infer that the BLU Family of Marks is inherently distinctive and has secondary meaning.

### a. *Inherently distinctive*

The Third Circuit has described the difference between "inherently distinctive" marks (for which secondary meaning is presumed) and merely "descriptive marks" (for which secondary meaning must be proven) as follows:

> Distinctive marks include those which are arbitrary, fanciful, or suggestive. Arbitrary marks are those words, symbols, pictures, etc., which are in common linguistic use but which, when used with the goods or services in issue, neither

---

7–8). NJ Ale House argues that if the challenges are successful, LTI and LOEC's "registered BLU ECIGS mark may be cancelled and the remaining marks may be refused registration by the USPTO." (*Id.* at 8). Should such events arise, the validity, legal protectability, and ownership of LTI and LOEC's BLU Family of Marks would certainly come into question. Currently, there is no final judgment about LTI and LOEC's trademarks. The California case appears to be at the summary judgment stage. (*See* Docket No. 14-cv-2596 (RGK-FFM), Central District of California). This Court will certainly take any potential rulings about the BLU Family of Marks into account in this case.

suggest nor describe any ingredient, quality or characteristic
of those goods or services. Fanciful marks consist of coined
words which have been invented for the sole purpose of
functioning as a trademark. Marks such as letters, numbers,
product and container shapes, and designs and pictures
may also be classed as fanciful. Suggestive marks are
virtually indistinguishable from arbitrary marks, but have
been defined as marks which suggest a quality or ingredient
of goods. The secondary meaning analysis is used for marks
which are merely descriptive. A mark is considered
descriptive if it describes the intended purposed, function, or
use of the goods; of the size of the goods, of the class of
users of the goods, of a desirable characteristic of the goods,
or of the end effect upon the user. The characterization of a
mark is a factual issue for the jury.

*Ford Motor Co.*, 930 F.2d at 292 n.18 (internal quotations and citations
omitted).

   With respect to a mark's being arbitrary and suggestive, "[t]he
significant factor is not whether the word itself is common, but whether
the way the word is used in a particular context is unique enough to
warrant trademark protection." *Fisons Horticulture, Inc. v. Vigoro Indus.,
Inc.*, 30 F.3d 466, 478 (3d Cir. 1994) (quoting *Wynn Oil Co. v. Thomas*,
839 F.2d 1183, 1190 n.4 (6th Cir. 1988)) (internal quotations omitted).
For example, "[t]he words 'shell,' 'camel' and 'apple' are not uncommon,
but they are arbitrary when applied to gasoline, cigarettes and
computers." *Id.* (citing 1 *McCarthy on Trademarks*, § 11:26[3]). The Third
Circuit noted that although the word "Fairway" "is not uncommon," a
plaintiff had presented evidence that "when applied to peat moss . . . [it]
was unusual enough that it could qualify for trademark protection." *Id.*
at 478–79.

   A court in this district held that the mark "THE NO! BUTTON" was
suggestive, rather than descriptive, because "it suggests rather than
describes the characteristics" of a toy product, and "it is not immediately
apparent from the mark what the product . . . provides." *Zany Toys, LLC*

11

*v. Pearl Enterprises, LLC*, No. CIV.A. 13-5262 JAP, 2014 WL 2168415, at *6 (D.N.J. May 23, 2014). The *Zany Toys* Court defined a "descriptive" mark in terms of immediacy:

> A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods. If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness.

*Id.* (internal quotation and citation omitted).

In this case, the pleadings suggest that the BLU Family of Marks is arbitrary or suggestive—meaning that the marks likely qualify for trademark protection. True, the term "blu" is similar to "blue," which is a quality of the e-cigarettes themselves—that is, the LED tip on the electronic cigarettes is blue in color. (Compl. ¶15). However, the term "BLU" does not immediately convey that; it "suggests rather than describes" the blue-colored LED light feature of the electronic cigarettes. *Zany Toys, LLC*, 2014 WL 2168415, at *6. Moreover, "it is not immediately apparently from the mark what the product . . . provides." *Id.* Specifically, the blue triangle on top of the letter "l" in "blu" might symbolize the blue LED tip to someone already familiar with this electronic cigarette; it is not immediately apparent from the mark alone, however, that the product is an electronic cigarette with a blue-lit LED light feature.

Therefore, there are sufficient facts in the complaint from which to infer that the BLU Family of Marks is inherently distinctive, and therefore qualifies for trademark protection.

### b. Secondary meaning

In the alternative, LTI and LOEC have also sufficiently pled that the BLU Family of Marks has acquired a secondary meaning. "Secondary meaning exists when the mark is interpreted by the consuming public to

be not only an identification of the product or services, but also a representation of the origin of those products or services." *Commerce Nat. Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (internal quotation and citation omitted). "In general, it is established through extensive advertising which creates in the minds of consumers an association between the mark and the provider of the services advertised under the mark." *Id.* (internal citation omitted). The Third Circuit has enumerated the following non-exhaustive list of factors that courts may consider in determining whether a mark has acquired secondary meaning:

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

*Id.* (internal citation omitted).

At the motion to dismiss stage, this Court need not conclusively determine that the BLU Family of Marks has acquired secondary meaning. Rather, it is sufficient that LTI and LOEC have pled facts pertaining to the factors enumerated above. For instance, LTI and LOEC have pled the following with regard to factors one, two, seven, nine, and ten: (1) the BLU Family of Marks have been in use since 2009 (Compl. ¶14); (2) the BLU brand was used to sponsor a NASCAR Sprint series (*id.* ¶17); (3) the BLU brand was promoted at "major entertainment and sporting events, including the Oscars, American Music Awards, MTV Movie awards, Grammy awards, Country Music awards, and the American Century Golf Championship" (*id.*); (4) the BLU brand was promoted nationally in connection with the Wounded Warrior Project (*id.* ¶18); (5) the BLU brand has appeared in a variety of media, including "the *Drudge Report, Jet Set Magazine, Rolling Stone, SPIN, Maxim, Men's*

*Journal*, *Esquire*, REELZ Channel, Si TV, MSG Network, BBC America, MAV TV, NPR, and *USA Today*" (*id.* ¶19); (6) the BLU brand has been "promoted in commercials featuring celebrity spokespersons Stephen Dorff and Jenny McCarthy (*id.*); (7) "[m]illions of BLU electronic cigarette products have been sold, and continue to be sold, at thousands of retail locations throughout the United States and via the Internet, including at Walgreens, Cumberland Farms, Sheetx, BiLo, H-E-B, Ingles, Meijer, Jackson Foods, Weis Markets, Kerr Drug, Scolari's, and others, as well as at www.bluecigs.com" (*id.* ¶20); and (8) the BLU brand has been advertised as bars, restaurants, and lounges during promotions such as the "BLU 'Freedom Project' Live Music Series" (*id.* ¶21).

Contrary to NJ Ale House's assertions (*see* Def. Mot. 8), LTI and LOEC have pled more than conclusory allegations regarding the secondary meaning and inherent distinctiveness of the BLU Family of Marks. Rather, LTI and LOEC have set forth sufficient facts from which this Court may plausibly infer that the BLU Family of Marks is inherently distinctive or has acquired a secondary meaning.

### 2. *Likelihood of confusion (Element 3)*

"The third element required to prove infringement or unfair competition—likelihood of confusion—is a question of fact." *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 406 (D.N.J. 2010) (citing *Checkpoint Sys., Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 301 (3d Cir. 2001)).

"A likelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 211 (3d Cir. 2000) (internal quotation and citation omitted). Court use the following "*Lapp* factors" to evaluate likelihood of confusion:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;

(2) the strength of the owner's mark;

(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

(4) the length of time the defendant has used the mark without evidence of actual confusion arising;

(5) the intent of the defendant in adopting the mark;

(6) the evidence of actual confusion;

(7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media;

(8) the extent to which the targets of the parties' sales efforts are the same;

(9) the relationship of the goods in the minds of consumers because of similarity of functions; and

(10) other factors suggesting the consuming public might expect the prior owner to manufacture a product in the defendant's market or that he is likely to expand into that market.

*Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010) (quoting *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3rd Cir. 1983)).

At this stage, it is sufficient that LTI and LOEC have alleged the following: (1) the BLU ALEHOUSE marks are similar in "overall look, feel and connotation" to the BLU Family of Marks[4] (*Lapp* factor 1) (Compl. ¶30); (2) the blue-colored LED tip on LTI and LOEC's electronic cigarettes is "well known among consumers" (*Lapp* factor 2) (Compl. ¶15); (3) products using the BLU Family of Marks have been nationally promoted through myriad channels (*Lapp* factor 2) (Compl ¶¶17–19); (4) NJ Ale House's bar and restaurant is "directed at a similar consumer base" to

---

[4]    As discussed in the Background section, LTI and LOEC have substantiated this allegation with images of both sets of marks.

LTI and LOEC's consumer base, and NJ Ale House advertises the NJ ALEHOUSE marks with the intent to confuse consumers "into mistakenly believing that the BLU ALEHOUSE goods and services are associated with, affiliated with, or sponsored by" LTI and LOEC (*Lapp* factor 5) (Compl. ¶¶29, 33); and (5) BLU Family of Marks products are promoted at bars, restaurants, and lounges, and BLU ALEHOUSE's consumer base and use of its marks at its bar and restaurant overlaps with LTI and LOEC's consumer base and marketing efforts (*Lapp* factors 7, 8, 10) (Compl. ¶¶28, 29).

LTI and LOEC allege facts relating to at least six of the ten *LAPP* factors. Based on these allegations, LTI and LOEC have made out plausible claims for trademark infringement and unfair competition. *See, e.g., IDT Corp. v. Unlimited Recharge, Inc.*, No. CIV.A. 11-4992 ES, 2012 WL 4050298, at *5 (D.N.J. Sept. 13, 2012) (denying defendants' motion to dismiss based on plaintiff's allegation of facts relating to six of the ten *LAPP* factors and noting that "'no one factor is dispositive.'" (quoting *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 473 (3d Cir. 2005)); *CSC Holdings, LLC v. Optimum Networks, Inc.*, 731 F. Supp. 2d 400, 407 (D.N.J. 2010) (denying defendants' motion to dismiss based on plaintiff's allegation of facts relating to eight of the ten *LAPP* factors).

Whether, in fact, there is a likelihood of confusion between LTI and LOEC's marks and NJ Ale House's marks is a fact-laden inquiry that is more appropriately undertaken at the summary judgment stage.[5]

---

[5]    NJ Ale House's submission of a letter from the USPTO finding that there were "no conflicting marks that would bar registration" of the BLU ALEHOUSE mark is not dispositive of this issue. (Def. Mot. 3 (citing Ex. B)). "Although an initial PTO determination by an examining attorney may be considered, it need not be given weight when the PTO attorney did not review all the evidence available to the District Court." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221 (3d Cir. 2000). In this case, the parties will likely present more evidence than the USPTO had available when making this determination. In any case, I do not find the USPTO determination dispositive at the motion to dismiss stage.

### III.   CONCLUSION

For the foregoing reasons, the motion to dismiss is DENIED.

Dated: March 13, 2015

**Kevin McNulty**
**United States District Judge**